**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    PLAINTIFF, | * | |
| | * | |
| | * | |
| v. | * | CASE NO. 1:20-cr-00089-JJM |
| | * | |
| MANISH KUMAR | * | |
|     DEFENDANT, | * | |

## <u>DEFENDANT MANISH KUMAR'S REQUEST FOR VARIANCE AND SENTENCING ENTENCING MEMORANDUM</u>

Comes now, Manish Kumar, by and through counsel, submits this sentencing memorandum in support of his request for a sentence of 18 months' imprisonment (the time he has served in pretrial detention), followed by five years of supervised release. The sentence requested is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). For the reasons set forth below, Mr. Kumar submits that the requested sentence conforms to this standard and Mr. Kumar requests that the Court grant his request for a downward departure/variance and a recommendation for supervised release.

At the time Mr. Kumar first appeared before the Court, he was a newlywed, approaching a one-year anniversary in which he and his wife were en route to celebrate their anniversary in Hawaii. Presently, his wife is seeking a divorce, having not seen him in over 18 months. On a very human level, these changed circumstances factor into the length and severity of any sentence that is necessary to fulfill the Congressionally mandated sentencing factors. Further, he is a non-violent offender and a non-resident of the United States, who will surely face deportation proceedings following his term of incarceration, and Mr. Kumar does not pose a future threat to society.

Mr. Kumar has fully accepted and admitted his wrongdoing. He has agreed to make restitution to his victims. And, as evidenced by the substantial number of letters tendered on his behalf, his family and loved ones are shocked by Mr. Kumar's present situation as they are not consistent with his true character and potential. For example, a letter offered by Mr. Kumar's father, Dinanath Pal, states in part "he is the only responsible son I have…I am glad that we did not know this before, he did not tell us what happened to him because he thought when we could come to know about this news we will be ashamed of him."

1

In fashioning a sentence a sentencing court must consider the factors outlined in 18 U.S.C. § 3553(a) and impose a sentence that is "sufficient but not greater that necessary" to achieve the purposes of sentencing set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007) (emphasis added; *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Booker*, 543 U.S. 220, 245 (2005). The request for sentencing set forth herein are sufficient and not greater than necessary when compared to recently decided cases concerning similarly situated defendants.

Post-*Booker* and its progeny, courts have limited the Sentencing Guidelines to the role of a "rough approximation of sentences that might achieve § 3553(a)'s objectives." *See* e.g., *Kimbrough*, 552 U.S. at 89 (emphasis added). Thus, a court "may not presume that the Guidelines range is reasonable" or appropriate. *Gall*, 552 U.S. at 50. Rather, it "must make an individualized assessment based on the facts presented," and "[t]he only fact necessary to justify…a variance is the sentencing court's disagreement with the guidelines." *Id*. (emphasis added); *Spears v. United States*, 555 U.S. 261, 264 (2009) (per curiam) *quoting United States v. Spears*, 533 F.3d 715, 719 (8th Cir. 2008) (dissenting opinion).

In this context, a downward variance is justified, and a sentence of 18 months' time served is appropriate, or in the alternative, no more than 24 months imprisonment.

## I.      THE OFFENSE/FACTUAL BACKGROUND

Mr. Kumar pled guilty to one count of Conspiracy to Commit Wire Fraud, 18 U.S.C. §§ 1349 and 1343; three counts of Wire Fraud, 18 U.S.C. § 1343; and two counts of Aggravated Identity Theft, 18 U.S.C. § 1028A.

Prior to March 2019, Mr. Kumar was a law-abiding citizen living a non-descript life on the precipice of achieving big goals personally and professionally. A determined part-owner of a pharmaceutical sales business in India and recently married, Mr. Kumar had forged a young promising career and looked forward to starting a family with his wife. Approached by friends with an opportunity to make a quick buck, Mr. Kumar regrettably agreed to participate in the fraudulent scheme unbeknownst the full scope of the scheme. Beginning in March 2019, Mr. Kumar participated in a conspiracy to de-fraud US citizens on at least two occasions by illegally providing bank account information to other co-conspirators over the text message service, WhatsApp. Before fully thinking about the consequences of his actions, Mr. Kumar committed the crimes of wire fraud and aggravated identity theft. As a result of these fraudulent acts, two

2

innocent victims suffered actual losses totaling $8,500, of which, $3,500 was returned to one of the victims. Notably, Mr. Kumar never received any proceeds from this fraudulent scheme.

Several months passed between the tech fraud and refund fraud scheme that Mr. Kumar participated in until he was again contacted by a friend soliciting stolen credit card information. Out of a sense of misguided loyalty and to an extent greed, in August 2019, Mr. Kumar again provided personally identifiable information (credit card information) to the requestor, who was acting as a confidential informant at the behest of the US government. In this instance, Mr. Kumar illegally provided a total of 37 credit cards and associated names to the confidential informant. Shortly after providing the information to the confidential informant, Mr. Kumar was arrested while traveling with his wife to John F. Kennedy Airport in New York.

Mr. Kumar accepts responsibility for his wrongdoing and is sincerely remorseful for his conduct. He knows that his actions have created a hardship on the individuals that were impacted by his conduct. He is deeply sorry for his actions and looks forward not only to expressing remorse to the victims at his upcoming hearing, but also to ensure that restitution is made to the victims.

Mr. Kumar asks the Court to consider not just his criminal acts, but also his lack of prior criminal history, the collateral consequences (including the loss of his reputation, the divorce proceedings his wife initiated against him, and the loss of his business), and the 18 months he has been detained since his arrest. Mr. Kumar also asks the Court to consider that although he regrettably (and illegally) participated in these fraudulent schemes, he personally did not benefit financially from either scheme. A sentence within the advisory guideline range is far in excess of what is just or necessary in this case. A sentence of 18 months' time served or in the alternative 24 months incarceration followed by a term of years of supervised release and restitution is the just result.

## II.    PRESENTENCE REPORT

The Presentence Report ("PSR") indicates a Total Offense Level of 14, a Criminal History Category of I, a Sentencing Guideline range of 15 months to 21 months, with an additional 24 months as to Counts 6 and 7 (Aggravated Identity Theft, 18 U.S.C. § 1028A), to run consecutively. There is one objection to the Final PSR. Specifically, Mr. Kumar has objected to the two-level upward adjustment for his role in the offense. The rationale for the objection to this two-level upward adjustment is explained in detail below within the "Nature of the Offense".

### III.    FACTORS UNDER 18 U.S.C. § 3553(A)

As established below, the factors outlined in 18 U.S.C. § 3553(a) demonstrate that a sentence below the Guidelines range is appropriate.  These seven factors are (1) the nature and circumstance of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed, (3) the kinds of sentences available, (4) the Sentencing Guidelines, (5) the Guidelines' policy statements (6) disparity with similar offenders, and (7) the need to provide restitution to the victims of the offense.  18 U.S.C. § 3553(a).

### 1.   Nature of the Offense and History and Characteristics of the Defendant

Post-*Booker*, there is "[n]o limitation…on the information concerning the background, character, and conduct of a [defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3561.

### (a) History and Characteristics of Mr. Kumar

Mr. Kumar genuinely understands and regrets his decisions.  A life-long resident of Delhi, India, Mr. Kumar lived a modest life and worked hard to improve the lives of his family and loved ones. In fact, his actions are uncharacteristic of a person who has defied the odds and made something of himself despite a childhood in which his father's alcoholism - and the deleterious effects of the disease – negatively impacted Mr. Kumar and his younger brother, Babloo.  In light of his father's addiction to alcohol and the subsequent decline in physical health, Mr. Kumar took on financial responsibilities for the family and sacrificed much of his youth for the betterment of his family.

With determination, Mr. Kumar completed high school in Delhi, India in 2006, but due to financial/familial obligations, he did not attend college.  Instead, Mr. Kumar worked at various call centers over a ten-year period, providing technical and customer support for callers.  In 2017, Mr. Kumar opened a business, Mihu Private Limited, an online pharmaceutical sales company, with three business partners.  The business was a "middle-man" and helped facilitate the online sales of pharmaceutical drugs utilizing a supplier in Singapore.  Since Mr. Kumar's arrest, he has not spoken to his business partners and is unaware if his business still exists or not.

In 2018, approximately one year before his arrest, Mr. Kumar married Maria Piendl, a German citizen and a flight attendant for Emirates Airlines. While en route to the United States for an anniversary/honeymoon holiday, he was detained at the JFK airport, and has since been held at the Plymouth County Correctional Facility. Once supportive of her husband, Ms. Piendl has now filed for divorce, not having seen her husband in over fourteen months. Unsurprisingly, this has been emotionally devastating for Mr. Kumar, as he has lost his wife and because she was the conduit for communications with his family, he has not been able to communicate with his family over the past six to eight months.

### (b) Nature of the Offense

The Addendum and Revised Presentence Investigation Report ("PSR") provides an explanation of the offense, and Mr. Kumar agrees with those explanations with the exception of the two-level upward adjustment for the role in the offense. Specifically, the objection concerns Mr. Kumar's role related to providing credit card information to a confidential informant at the direction of government law enforcement.

Without limiting Mr. Kumar's full acceptance of responsibility in any way, it is clear that the acts at issue implicate matters of dispute with respect to whether Mr. Kumar abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense. Pursuant to the Sentencing Guidelines, if a "defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." In short, there are two threshold questions that determine the application of the abuse of trust enhancement. First, whether the defendant held a position of public or private trust. If so, whether the position of trust "significantly facilitate[d]" commission or concealment of the offense.

The Commission provides the definition of "public or private trust" in Application Note One of § 3B1.3: "Public or private trust refers to a position of public or private trust characterized by professional or managerial discretion (i.e. substantial discretionary judgment that is ordinarily given considerable deference). Application Note One details examples of positions of public trust where the adjustment would be appropriate, including: "the case of an embezzlement of a client's funds by an attorney serving as guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination." Application

Note One also details situations in which the adjustment does not apply, including in "the case of an embezzlement or theft by an ordinary bank teller or hotel clerk."

Here, it is debatable whether Mr. Kumar held a position of public or private trust that is similar to the relationship between an attorney/client or patient/physician that warrants an adjustment. In this case, Mr. Kumar gained access to credit card information through various means that involved no professional or managerial discretion that is described in Application Note One of § 3B1.3.

Moreover, in a substantive review of the discovery provided by the Government, there is ambiguity as to whether the credit card information that Mr. Kumar provided originated from his pharmaceutical company or from call centers. On one hand, documents provided by the Government show that in an August 15, 2019, text message between Mr. Kumar and the Government's confidential informant, Mr. Kumar was asked whether the credit card information he just supplied to the confidential informant via text message was "pharma" or "random", to which Mr. Kumar replied "pharma". In the transcript of a phone call between Mr. Kumar and the confidential informant that was also placed on August 15, 2019, the transcript reveals that Mr. Kumar again indicated that the credit card information he provided to the confidential informant were "merchant pharma cards", however in the same phone conversation, Mr. Kumar advised that the came from "other call centers".

Additionally, assuming *arguendo* that Mr. Kumar obtained the credit card information from US customers who purchased pharmaceutical drugs from Singapore via his company in India, the actual purchase of pharmaceutical drugs online from foreign pharmacies by US citizens is prohibited without valid prescriptions. This poses a question as to whether Mr. Kumar's business (and his role as a business owner) is in a position of public/private trust where the very service that his company provides is to act as a middleman for a prohibited/illegal activity.

In sum, it is difficult in this instance to ascertain whether or not Mr. Kumar abused a position of trust or used a special skill to warrant an adjustment. This does not in any way take away from the fact that Mr. Kumar engaged in illegal and improper activities. But the applicability of the 2-level enhancement is not supported by the facts in this case.

2. **The Need for the Sentence Imposed**

The purpose of sentencing – retribution, general deterrence, specific deterrence, and

rehabilitation – justify a sentence below the Guidelines range. See 18 U.S.C. § 3553(a)(2). Under 18 U.S.C. § 3553(a)(2), the sentence imposed must reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. The Supreme Court has held that even a sentence of probation should not be considered a lenient sentence, as it carries with it substantial restrictions on liberty. *Gall*, 552 U.S. at 44, 48.

As one court recently noted: "Not all defendants must be sentenced to imprisonment to be duly punished." *United States v. Coughlin*, 2008 BL 301746 (W.D. Ark. Feb 01, 2008) on remand from *United States v. Coughlin*, 500 F.3d 813 (8th Cir. 2007) (imposing a sentence of five years' probation upon former Chief Operating Officer, Executive Vice President and Vice Chairmen of the Board of Directors of Wal-Mart Stores Inc., who pled guilty to five felony counts of aiding and abetting wire fraud and one count of filing false tax returns, where guidelines range was 27 to 33 months). Such "punishment is far from an act of leniency, and its characterization as such deprives sentencing courts of a valuable and effective form of punishment." *Id*. Particularly in a case like this, where Mr. Kumar has been detained for over 18 months, has not seen his family in the same amount of time, and whose wife has initiated divorce proceedings against him, a sentence of more than the 18 months that he has already incarcerated is not necessary to accomplish the goal of retribution.

In this case, general deterrence will be served through the proposed sentence and variance. General deterrence aims to deter others from crime. News of Mr. Kumar's conviction and others like his case have gained international media attention, which demonstrates to the public at large that the proceeds of any fraud from similar conduct will be discovered and violators will be prosecuted to the full extent of the law – deterring any would-be offenders from participating in a similar scheme.

Specific deterrence will also be served through the proposed sentence and variance. Mr. Kumar has fully accepted responsibility for his actions, expressed remorse for his actions, and will surely be deported back to India at the conclusion of his incarceration. All of the character letters provided by his family and friends agree that this is not who he is as a person, and if given the opportunity to return home at once he will avoid any semblance of illegal conduct in the future. Imposing any sentence above the proposed sentence and variance would not be necessary so as to further deter Mr. Kumar from illegal conduct in the future.

### 3. The Kinds of Sentences Available

Congress has stated that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and nonserious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." See Pub L. No 98-473 § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note).

Neither counsel nor Mr. Kumar seeks in any way to diminish the gravity of the instant offense. But Mr. Kumar submits that the 18 months that he has been detained combined with a sentence of supervised release and restitution will satisfy the goals of sentencing as defined in 18 U.S.C. § 3553(a).

### 4. The Sentencing Guidelines and Policy Statements

A sentence of 18 months incarceration (time served) will adequately reflect the purpose of sentencing. The Commission has recognized the importance of a defendant's responsibilities to his or her family in determining proper sentencing. USSG § 5H1.6, Policy Statement. A departure from the guidelines may be warranted when:

(i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.

(ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

(iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the

> defendant's caretaking or financial support irreplaceable to the defendant's family.

> (iv) The departure effectively will address the loss of caretaking or financial support.

USSG § 5H1.6, Policy Statement.

At the time of his arrest at the JFK Airport in New York, Mr. Kumar was on his way to honeymoon with his wife and celebrate their one-year anniversary. Mr. Kumar supported his wife who worked as a flight attendant, but also provided substantial financial support for his parents who were no longer working. The unexpected loss of financial support and Mr. Kumar's inability to provide for his family substantially exceeds the harm normally incident to (continued) incarceration for a similarly situated defendant and would cause direct, substantial loss of essential caretaking and financial support to Mr. Kumar's family. Indeed, this sudden change has resulted in Mr. Kumar's wife filing for divorce due to the strain his incarceration has placed on their family from a financial and mental aspect.

### 5. Unwanted Disparity with Similar Offenders

A downward variance from the Guidelines sentence range would not create a disparity with similar offenders: it would, in fact, promote uniformity when compared to several highly relevant, similar offenders/sentences. Indeed, in 2018, courts across the country imposed a sentence on a defendant convicted of fraud/theft/embezzlement that varied from the Guidelines' range 34.8% of the time. See U.S.S.G., Statistical Information Packet Fiscal Year 2018, Table 10 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/1c18.pdf). Within the First Circuit, persons convicted of fraud/theft/embezzlement varied from the Guidelines' range 42.2% of the time. In other words, courts frequently sentence defendants outside the range recommended by the Guidelines. In looking at cases within Rhode Island that are useful comparators, it is important to note that there are only a handful of cases dealing with the particular conduct at issue here (involving foreign nationals).

For comparison, in *United States v. Sachdeva*, 1:20-cr-00073-JJM-LDA, the Court sentenced the defendant to 33 months' imprisonment for fraudulent charges including attempted Wire Fraud, Aggravated Identity Theft, and Conspiracy to Commit Bank Fraud. In *Sachdeva*, the

defendant had a total offense level of 20, resulting in an advisory U.S. Sentencing Guidelines range of 33-41 months. The Court declined to depart from the *Guidelines* range in Sachdeva.

Conversely, in *United States v. Lalrempuia*, 1:19-cr-0017, the Court sentenced the defendant to only nine months' imprisonment and three years supervised release for opening bank accounts in Rhode Island and fraudulently inducing victims into depositing money into the newly created bank accounts and the subsequent transfer of funds internationally to accounts in India, China, and Singapore. The total fraud loss as a result of the conspiracy was in excess of $900,000. In *Lalrempuia*, the Guidelines Range was 33 to 41 months, and the Court departed from the Guidelines Range, in part due to a motion filed by the government.

Mr. Kumar's case is more analogous to *Lalrempuia* than *Sachdeva*. In this case before the Court, Mr. Kumar admittedly committed fraudulent acts largely motivated by opportunity and misguided loyalty. Not to diminish the brazenness of his actions, but the illegal transactions were committed on a handful of occasions and amounted to actual financial losses that were substantially less than the actual losses in *Lalremupuia* or *Sachdeva*. Additionally, as previously stated, unlike the previously mentioned cases this Court has presided over, in this case, Mr. Kumar has already been detained for over 18 months and has suffered severe collateral consequences – which will continue long after he is sentenced.

As these cases demonstrate, the sentence requested by Mr. Kumar would not create an unwarranted disparity.

### 6. Immigration Consequences

Mr. Kumar is not a U.S. Citizen. Because of the offense to which he pleaded guilty, and due to the fact that he is now in the country illegally, he is subject to deportation – another collateral consequence not incurred by citizen-offenders – upon completing his term of incarceration. Mr. Kumar stipulates to his removal from the United States and deportation to India. He respectfully asks that his consequence be imposed against him as soon as possible following his sentence. See *United States v. Szanto*, 2007 WL 33734399 (N.D. Ill. Nov 8, 2007) (district court granted downward departure variance based on, among other things, defendant's agreement to be deported).

## IV.   CONCLUSION

For all of the reasons set forth above, Mr. Kumar respectfully requests that this Court grant a departure/variance below the Guidelines range and impose a sentence of 18 months incarceration (time served), or in the alternative, 24 months incarceration, followed by a term of supervised release and restitution, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553(a).

Respectfully submitted on this 7th day of February 2021.

Respectfully submitted,

MANISH KUMAR,
By his attorney

*s/Kensley R. Barrett*
KENSLEY R. BARRETT
Bar No. 8657
Marin & Barrett, Inc.
127 Dorrance Street, Pth Suite
Providence, RI 02903
Phone: (401) 380.6724
Fax: (401) 679.0122
Email:kb@marinbarrettlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I, do hereby certify that on February 7, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Milind Shah
Assistant United States Attorney
50 Kennedy Plaza
Providence, Rhode Island 02903

Respectfully submitted,

*s/Kensley R. Barrett*

KENSLEY R. BARRETT
Marin & Barrett, Inc.
127 Dorrance Street, Pth Suite
Providence, RI 02903
Phone: (401) 380.6724
Fax: (401) 679.0122
Email:kb@marinbarrettlaw.com
Bar No. 8657